UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| ABDUL HARRIS,<br><br>Plaintiff,<br><br>v.<br><br>STL TRUCKERS LLC and BEKHZOD MIROBIDOV,<br><br>Defendants. | Civ. No. 24-05316 (RK)(JBD)<br><br>**MEMORANDUM ORDER** |

Before the Court is plaintiff Abdul Harris's motion to effect alternative service on defendant Bekhzod Mirobidov, currently located in the Republic of Uzbekistan, by serving defendant STL Truckers LLC's ("STL") insurance carrier, ACE American Insurance Company ("ACE"). [Dkt. 60.] STL opposes the motion. [Dkt. 62.] The Court has carefully considered the parties' submissions and applicable law. For the reasons set forth below, the Court will deny the motion.

## I. BACKGROUND

Harris initiated this personal injury action on April 19, 2024 against STL and several John Doe defendants. [Dkt. 1.] In his original complaint, Harris alleged that on June 21, 2023, an unknown individual (identified as a John Doe defendant) negligently operated a vehicle belonging to STL and caused it to collide with his car. *Id.* at 2. Harris alleged that he was seriously injured in the accident and sought judgment against the John Doe driver and STL "individually, jointly and severally." *Id.* Although he initially did not know the identity of the John Doe driver, during

discovery, Harris identified defendant Mirobidov as the alleged driver. [Dkt. 60-1] at 2. At the time of the asserted accident, Mirobidov was a commercial truck driver working as an independent contractor for STL; however, he has since stopped working for the company. [Dkt. 62] at 5. Upon identifying Mirobidov, Harris filed an amended complaint substituting him as a defendant for the John Doe driver. [Dkts. 49, 50.] Summons issued to Mirobidov on February 6, 2026. [Dkt. 52.] To date, however, Harris has not effected service on Mirobidov because Mirobidov has moved to an unknown location in his home country of Uzbekistan. *See* [Dkts. 56, 58, 60].

Harris first raised this service issue to the Court in a letter dated April 22, 2026. [Dkt. 56.] In the letter, Harris explained that he asked STL's counsel to accept service on Mirobidov's behalf, but that STL's counsel declined because he is not authorized to do so. *Id.* Without describing or identifying any attempts to locate or otherwise contact Mirobidov, Harris requested leave to file a motion for substituted service on STL's insurance carrier, ACE. *Id.* In the alternative, Harris asked the Court to enter an order permitting the substituted service without motion practice. *Id.* Relevant here, Mirobidov is not a named insured or otherwise specifically identified in STL's insurance policy with ACE, and it does not appear that ACE has been in contact with Mirobidov regarding this action (or otherwise). [Dkt. 62] at 6. And STL and ACE have neither confirmed nor denied that Mirobidov, as an independent contractor, is covered under the policy as an authorized user of STL's vehicle.

In response to Harris's letter, counsel for STL confirmed that he does not represent Mirobidov and is not authorized to accept service on his behalf. [Dkt. 58] at 1. Yet it appears that STL's principal is (or at least has been) in contact with Mirobidov: Counsel's letter indicated that "Mirobidov has no intention of returning to the United States, but that he is amenable to submitting to a sworn, videotaped Zoom deposition." *Id.* Counsel for STL also "object[ed] to [Harris]'s request for an Order substituting service in any manner without proper motion practice" and requested a telephone status conference with the Court. *Id.* at 1-2.

The Court held a telephone status conference on April 27, 2026, during which the parties discussed the service issues described above. *See* [Dkt. 59]. Ultimately, the Court granted Harris's request for leave to file the present motion for substituted service. [Dkt. 61.] As previewed in his April 21 letter and during the April 27 telephone status conference, Harris seeks to serve Mirobidov through STL's insurance carrier, ACE. [Dkt. 60.] STL opposes the motion. [Dkt. 62.]

## II. LEGAL STANDARDS

Because Mirobidov is currently located in Uzbekistan (with no apparent intention to return to the United States), [Dkt. 62] at 5-6, the Court looks to Federal Rule of Civil Procedure 4(f), which governs service on an individual located in a foreign country.[1] Unless federal law provides otherwise, Rule 4(f) permits service through the following means:

---

[1] Harris relies on New Jersey law to support his request for alternative service. [Dkt. 60-2.] Because Mirobidov is an individual located in a foreign country, however, Rule 4(f) and other applicable federal law governs; New Jersey law does

(1) by any internationally agreed means of service that is reasonably calculated to give notice, such as those authorized by the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents;

(2) if there is no internationally agreed means, or if an international agreement allows but does not specify other means, by a method that is reasonably calculated to give notice:

(A) as prescribed by the foreign country's law for service in that country in an action in its courts of general jurisdiction;

(B) as the foreign authority directs in response to a letter rogatory or letter of request; or

(C) unless prohibited by the foreign country's law, by:

(i) delivering a copy of the summons and of the complaint to the individual personally; or

(ii) using any form of mail that the clerk addresses and sends to the individual and that requires a signed receipt; or

(3) by other means not prohibited by international agreement, as the court orders.

Fed. R. Civ. P. 4(f).

Accordingly, Rule 4(f) generally "governs service of process on defendants in foreign countries," and provides "three potential methods for service: (1) under the Hague Convention or other applicable international agreement; (2) in the absence of limitations under an international agreement, as a foreign country's law prescribes or permits or as directed by a foreign authority; or (3) by other means not prohibited

---

not apply. *Glob. Trademarks, Inc. v. Zhao*, Civ. No. 24-7273 (MAH), 2026 WL 1893998, at *4 (D.N.J. July 1, 2026) ("Federal, rather than New Jersey, law controls when serving individuals located in foreign countries.").

by international agreement, as directed by the Court." *Celgene Corp. v. Blanche Ltd.*, Civ. No. 16-501 (LDW), 2017 WL 1282200, at *2 (D.N.J. Mar. 10, 2017). "[T]here is no hierarchy to these methods of service, and a party may effect service on an individual in a foreign country by any of the identified means." *Prodigy Fin. CM2021-1 DAC v. David Dacosta Aboagye*, Civ. No. 25-16283 (JBD), 2026 WL 1480402, at *3 (D.N.J. May 27, 2026) (citing *Vanderhoef v. China Auto Logistics Inc.*, Civ. No. 18-10174 (CCC), 2019 WL 6337908, at *2 (D.N.J. Nov. 26, 2019) (citations omitted)).

Where a party is reasonably believed to be in a foreign country, but the party's exact location is unknown, the Court may order service "by other means not prohibited by international agreement[.]" Fed. R. Civ. P. 4(f)(3); *see also id.* (citing *Premier Trailer Leasing, Inc. v. DM World Transp., LLC*, Civ. No. 19-2558, 2020 WL 886671, at *2 (M.D. Fla. Feb. 24, 2020) (citation omitted)). Indeed, Rule 4(f)(3) grants the Court "wide discretion" to approve alternative methods of service that are not otherwise prohibited by an international agreement. *U.S. Sec. & Exch. Comm'n v. Secure Cap. Funding Corp.,* Civ. No. 11-916 (DEA), 2011 WL 13143141, at *2 (D.N.J. Aug. 3, 2011). However, "[w]hen a party seeks authorization for alternative service pursuant to Rule 4(f)(3), courts in this District require the movant to establish the following three factors: '(a) there is no international agreement prohibiting service by the proposed method; (b) the proposed method of service is reasonably calculated to provide the defendant notice; and (c) [plaintiffs] have made a good faith effort to locate and serve defendants by traditional means.'"

*Karcz v. El Mezouak*, Civ. No. 26-1470 (JSA), 2026 WL 496476, at *2 (D.N.J. Feb. 23, 2026) (quoting *DUSA Pharms., Inc. v. Biofrontera Inc.*, Civ. No. 23-20601 (JBD), 2024 WL 4151169, at *3 (D.N.J. Sep. 11, 2024)); *accord Vanderhoef,* 2019 WL 6337908, at *2; *see also Prodigy Fin.*, 2026 WL 1480402, at *3 ("[A] movant should attempt service by traditional means before asking the Court to exercise its discretion in directing service pursuant to Rule 4(f)(3)." (collecting cases)). Ultimately, if the Court does exercise its discretion to order service under Rule 4(f)(3), the method of service ordered must comply with due process and be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950).

## III. DISCUSSION

Harris requests to serve Mirobidov via STL's insurance carrier, ACE. [Dkt. 60.] He submits that alternative service is necessary because he does not possess Mirobidov's contact information or his address in Uzbekistan. [Dkt. 60-2.] Harris argues that the Court should permit alternative service through ACE specifically because, under respondeat superior, "the defendant . . . is actually not the driver [Mirobidov], but the [insured] employer [STL]." [Dkt. 60-2] at 1. Harris further argues that alternative service in this matter is justified in light of the fact that "the extraction of concessions, evidently driven by internal figures within the insurance carrier, has been slow . . . with denial as to the existence of the claim, concession as to the existence of the claim when confronted with the photographs

taken following the accident, and [late] disclosure [ ] of [Mirobidov]," who was not identified until after he "left the United States for Uzbekistan." *Id.* at 1-2.

STL opposes Harris's request for alternative service. [Dkt. 62.] It argues that (1) Harris has not demonstrated that there is no international agreement that prohibits his proposed method of service; (2) Harris has failed to show that service on ACE is reasonably calculated to provide notice to Mirobidov; and (3) Harris has not demonstrated "good faith efforts to locate and serve [Mirobidov] through traditional means." *Id.* at 7-8. Indeed, STL asserts that Harris "failed to address the governing legal standard, failed to demonstrate diligence, and failed to show that the proposed method of substituted service would provide notice," so "his motion for substituted service fails as a matter of law." *Id.* at 8-9.

As noted, Mirobidov resides in Uzbekistan and does not appear to have any present intent to return to the United States. *Id.* at 5-6. Federal Rule of Civil Procedure 4(f) accordingly governs Harris's attempts to serve him. Although Harris does not reference Rule 4(f) in his submission, *see generally* [Dkt. 60-2], the Court reads his motion as a request for alternative service pursuant to Rule 4(f)(3).

As discussed above, courts in this district permit alternative service under Rule 4(f)(3) when the movant establishes three factors: "[1] there is no international agreement prohibiting service by the proposed method; [2] the proposed method of service is reasonably calculated to provide the defendant notice; and [3] [plaintiffs] have made a good faith effort to locate and serve defendants by traditional means." *Karcz*, 2026 WL 496476, at *2 (quoting *DUSA*, 2024 WL 4151169, at *3); *accord*

*Vanderhoef,* 2019 WL 6337908, at *2. Although it does not appear that there is any international agreement prohibiting service by Harris's proposed method, the Court concludes that Harris has not demonstrated (i) that service through ACE is reasonably calculated to provide Mirobidov with notice, and (ii) that he has made a good faith effort to locate and serve Mirobidov by traditional means. The Court will therefore deny Harris's motion at this time.

In the first instance, Harris does not address whether there are any applicable international agreements regarding service in Uzbekistan. [Dkt. 60-2.] Indeed, Harris relies only on New Jersey law to support his request for alternative service. *Id.*[2] Nonetheless, on its own review, the Court has not identified any international authority prohibiting alternative service on an individual located in Uzbekistan through an insurance carrier. Thus, the Court is satisfied that Harris's proposed method of service is not barred by international agreement.

The Court is not persuaded, however, that serving Mirobidov through ACE is reasonably calculated to give him notice of this action and will be consistent with due process or Rule 4(f). It does not appear that there has been any communication between ACE and Mirobidov to date, or that ACE is even able to contact Mirobidov.

[2] Even though inapplicable, the Court notes that in the two cases that Harris cites, courts permitted alternative service through insurance carriers only after the moving parties made unsuccessful attempts to locate and/or serve the defendants. [Dkt. 60-2] at 1 (citing *Ledbetter v. Schnur*, 107 N.J. Super. 479 (App. Div. 1969); *Feuchtbaum v. Constantini*, 59 N.J. 167 (1971)). As discussed in more detail below, Harris has not made the same showing here. Moreover, in both cases, and unlike this one, it was clear that the absent motorist was covered by the carriers' policies. Those cases are therefore distinguishable in any event.

Mirobidov is not a named insured or otherwise identified in the applicable STL insurance policy, and it is not clear at this time whether, if properly served, ACE will indemnify and/or defend Mirobidov in connection with this action. [Dkt. 62] at 6.[3] Furthermore, Mirobidov is no longer affiliated with STL, and defense counsel represents that neither STL nor ACE possesses Mirobidov's current address in Uzbekistan or his email address. *Id.* at 8. Particularly in the absence of a confirmed contractual relationship between ACE and Mirobidov, the Court concludes that Harris has not demonstrated that his proposed method of alternative service is reasonably calculated to provide notice of this action. *Cf. Kapanadze v. Hutchings*, Civ. No. 25-3861 (SDA), 2026 WL 764400, at *2 (D.N.J. Mar. 17, 2026) ("[W]hen an auto insurance carrier has a contractual obligation to defend and indemnify an individual insured, service on the carrier is reasonably calculated to provide the insured with both notice and an opportunity to defend in satisfaction of due process."); *Crockett v. Luitpold Pharms., Inc.*, Civ. No. 19-276, 2020 WL 4039046, at *3 (E.D. Pa. July 17, 2020) (permitting alternative service on defendant through domestic counsel where moving party demonstrated that there was "adequate and recent contact between [the] foreign defendant and their domestic counsel").

That said, it does appear that Mirobidov has notice of the present lawsuit, at least to some extent. As noted above, Mirobidov apparently has indicated that he is

[3] The extent to which ACE is required to insure *STL* for any of *Mirobidov's* negligent actions while driving its vehicle is a separate issue not relevant to the present issue regarding service of process on Mirobidov.

willing to sit for a virtual deposition from Uzbekistan, so he must have some information regarding the instant proceedings. [Dkt. 62] at 6; *accord* [Dkt. 58] at 1. But it is not clear whether Mirobidov is aware that he is a defendant in this action, or of the specific allegations against him. And even if Mirobidov is generally aware of this litigation, the Court is not convinced that permitting Harris to effect service through ACE in these circumstances will reasonably apprise Mirobidov of his status in this litigation, the allegations against him, and his obligation to defend the suit.[4]

The Court separately concludes that Harris has not made a good faith effort to locate and serve Mirobidov by traditional means. Indeed, Harris has not provided any evidence that he has made any attempts to locate Mirobidov within Uzbekistan, or otherwise to contact him. Although Harris submits several exhibits that he contends "illustrate [his] struggles . . . in the within matter," [Dkt. 60-1] at 1, none demonstrates any attempt to contact or locate Mirobidov outside the discovery process. *See* [Dkts. 60-1, 60-4]. Moreover, while the Court appreciates that Uzbekistan is not a signatory to the Hague Convention, *see Status Table*,

---

[4] In any event, a defendant's general awareness of a lawsuit is insufficient to allow a plaintiff to bypass reasonable attempts at traditional service before requesting alternative service under Rule 4(f)(3). *See RJ Brands, LLC v. Hangdong Trading Ltd.*, Civ. No. 21-4747 (ESK), 2021 WL 3206813, at *2-4 (D.N.J. July 28, 2021) (denying alternative service because the movant failed to attempt service through the Hague Convention, reasoning this "f[ell] short of reasonable diligence" even though the defendant's domestic counsel was notified of the matter); *DUSA*, 2024 WL 4151169, at *5-7 (denying alternative service because plaintiffs did not allow sufficient time for Hague Convention to proceed, despite there being "no reasonable debate that the foreign defendants [we]re aware of the present litigation"). As discussed below, Harris has not established that he has made a good faith effort to locate and serve Mirobidov by traditional means.

HCCH, https://www.hcch.net/en/instruments/conventions/status-table/?cid=17 (last visited August 21, 2026), it does not appear that Harris has even begun to look into service via any of the other traditional avenues provided for by the Federal Rules or under Uzbek law. Accordingly, the Court concludes that Harris has not "made a good faith effort to locate and serve [Mirobidov] by traditional means." *Vanderhoef*, 2019 WL 6337908, at *2.[5]

Because Harris has not established (i) that his proposed method of service is reasonably calculated to provide notice of the lawsuit, and (ii) that he has made a "good faith effort" to serve the defendants traditionally, *Vanderhoef,* 2019 WL 6337908, at *2, the Court denies Harris' motion for substituted service without prejudice. Before the Court will authorize alternative service, Harris must, at a minimum, make an effort to locate and/or obtain contact information for Mirobidov. *See Vanderhoef*, 2019 WL 6337908, at *1 (permitting alternative service of process where the plaintiffs had made numerous attempts to serve defendants in China, including attempting to serve the defendants personally, hiring an investigator to research addresses, actually attempting to comply with the procedures set forth by the Hague Convention). And, if he is unable to do so, he still must demonstrate that

[5] To be clear, Harris need not exhaust all potential means of traditional service before the Court will permit alternative service pursuant to Rule 4(f)(3), but he must at least attempt to locate and serve Mirobidov via traditional means. *See In re Heckmann Corp. Sec. Litig.*, Civ. No. 10-378 (MPT), 2011 WL 5855333, at *3 (D. Del. Nov. 22, 2011) (explaining that "the court may require the plaintiff to show that reasonable efforts to serve the defendant have been made and proven unsuccessful, and the court's intervention is necessary to prevent more futile attempts at service. However, it is not necessary that a plaintiff first attempt every permissible type of service prior to seeking relief from the court under rule 4(f)(3)").

any proposed method of alternative service is "reasonably calculated, under all the circumstances," to provide Mirobidov with notice of the claims asserted against him. *Mullane*, 339 U.S. at 314.[6]

To that end, the Court again notes that it appears that STL has been, in some fashion, in contact with Mirobidov since he moved to Uzbekistan. STL submits that it "learned that [Mirobidov] intends to remain in his home country of Uzbekistan and has no intention of returning to the United States," and it indicates that Mirobidov is "amenable to sitting for a remote Zoom deposition under oath." [Dkt. 62] at 6; *accord* [Dkt. 58] at 1. Although STL contends that it does not have Mirobidov's email or physical address, its knowledge regarding Mirobidov's whereabouts and willingness to participate in this litigation makes apparent that its personnel has been in contact with Mirobidov. To aid Harris in his attempts to locate Mirobidov (and to accelerate the process of attempting to serve him), the Court will direct STL or its principals to provide Harris with any contact or location information that it has for Mirobidov.

## IV. CONCLUSION

For the reasons stated,

**IT IS** on this **21st** day of **August, 2026**,

**ORDERED** that Harris's motion for alternative service [Dkt. 60] is DENIED without prejudice; and it is further

---

6 For the reasons described above, the Court is skeptical that under these specific circumstances, service via ACE will ever be reasonably calculated to provide notice to Mirobidov. Other methods of service may be more viable options.

**ORDERED** that STL and/or its principals shall forthwith provide any current contact or location information for Mirobidov to Harris's counsel; and it is further

**ORDERED** that the deadline to effect service on Mirobidov is extended to **October 20, 2026**.

J. BRENDAN DAY
UNITED STATES MAGISTRATE JUDGE